# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOSEPH EMANUELSON,      )
     )
        Plaintiff,      )
     )
         v.      )
     )
UNIVERSITY OF NORTH      )      1:17CV534
CAROLINA AT GREENSBORO,      )
et. al.,      )
     )
        Defendants.      )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on a motion to dismiss by Defendants Robin E. Remsburg, Franklin D. Gilliam, and the University of North Carolina at Greensboro. (*See* Docket Entry 13.) Plaintiff Joseph Emanuelson has responded to the motion. (*See* Docket Entry 17.) For the reasons that follow, the undersigned will recommend that Defendants' motion be granted in part and denied in part.

## I. BACKGROUND

This action arises from Plaintiff's dismissal from the University of North Carolina at Greensboro's ("UNCG") graduate nursing program ("the program"). (*See generally*, Compl., Docket Entry 1.) Plaintiff enrolled at UNCG in August, 2013 seeking a Master's of Science in Nursing with a concentration in nurse anesthesia, a program consisting of both academic and practicum courses. (*Id.* ¶ 9, 11). The clinically-based practicum courses were performed through Raleigh School of Nurse Anesthesia ("RSNA") and supervised by clinical preceptors. (*Id.* ¶ 11-12.) During his enrollment, Plaintiff reported multiple incidents of harassment as

well as incidents of physical assault and unwanted contact by his preceptors.[1] (*Id.* ¶¶ 12, 25-27.) Also during his enrollment, Plaintiff's physicians diagnosed him first with anxiety and major depression and later with generalized anxiety disorder, obsessive compulsive disorder, and major depressive disorder. (*Id.* ¶¶ 13, 17, 24.) Plaintiff's physicians wrote letters to UNCG and RSNA indicating these diagnoses. (*Id.*) One Physician also indicated that an April, 2014 incident of harassment and physical assault by a preceptor had been "traumatic" to Plaintiff, and that such incidents could "exacerbate [Plaintiff's] anxiety and affect attention and focus consequently." (*Id.* ¶ 12, 17.) In June 2014, Plaintiff registered with UNCG's Office of Accessibility, Resources and Services ("OARS"), which granted Plaintiff accommodations for his disability in the academic setting. (*Id.* ¶ 19.) Specifically, OARS granted Plaintiff additional time and a quiet environment for testing. (*Id.*) Despite Plaintiff's objections, neither UNCG nor RSNA granted Plaintiff accommodations for his clinical practicum courses. (*Id.*) On July 28, 2014, Plaintiff, UNCG, and RSNA entered into a "learning contract" that outlined how reports of mistreatment or abuse were to be handled. (*Id.* ¶¶ 20-21.) In pertinent part, the learning contract provided,

> Any concerns of mistreatment or abuse by a preceptor will
> be reported immediately by phone to the RSNA faculty member
> overseeing the clinical experience. The faculty member will
> remove the student from the supervision of the clinical preceptor

---

[1] In December, 2013, Plaintiff reported incidents of harassment by supervising preceptor Carrie Patrick. (*Compl.* ¶ 12.) In April, 2014, Plaintiff reported an incident of harassment and physical assault by supervising preceptor Cynthia Barnes. (*Id.*) In September, 2014, Plaintiff reported that his clinical preceptor had made him uncomfortable and had made unwanted contact. (*Id.* ¶ 25.) Also in September, 2014, Plaintiff filed a complaint alleging that RSNA Program Director Nancy Maree "questioned [Plaintiff's] commitment to the program and addressed ADA testing accommodations in front of other students . . . to harass Plaintiff, a student with disabilities who had previously complained of difficulties with preceptors and RSNA staff and faculty." (*Id.* ¶ 26.) In May, 2015, Plaintiff reported that preceptor Julie Brewer had made "disparaging comments about Plaintiff's capabilities as a nurse and student." (*Id.* ¶ 27, 36.)

and reassign to another preceptor. The RSNA Associate Director of Clinical Education will follow up with the clinical agency regarding the alleged treatment/abuse and submit a report to the RSNA Director and UNCG Associate Dean for Graduate Studies.

(*Id.* ¶ 20-21.)

On May 4, 2015, Plaintiff completed the academic coursework for the program. (*Id.* ¶ 28.) On September 18, 2015, Plaintiff completed a rotation of "independent practice" at Rex Hospital; he received satisfactory marks from all supervising preceptors there during that rotation. (*Id.* ¶ 19.) To earn his degree, he needed to compete eight more weeks of clinical coursework. (*Id.* ¶ 56.)

On October 8, 2015, preceptor Julie Brewer sent Plaintiff home from a clinical practicum at WakeMed for alleged "poor performance." (*Id.* ¶ 30.) [2] Earlier that year, around May 1, 2015, WakeMed preceptor Laura Smith had informed Plaintiff that preceptor Brewer had made disparaging remarks about Plaintiff's capabilities as a nurse and student. (*Id.* ¶ 27, 36.) Plaintiff had reported this incident to RSNA and requested reassignment to another preceptor, but UNCG staff denied the request. (*Id.*) On October 11, 2015, several days after preceptor Brewer sent Plaintiff home, "Plaintiff met with clinical preceptors and RSNA faculty at WakeMed Hospital. . . . At the meeting, Plaintiff was accused of falsifying medical records for a patient. Plaintiff did not return to the clinical site pending an investigation of the matter." (*Id.* ¶ 32.) Defendant Robin E. Remsburg, Dean of the University of North Carolina at

---

[2] Plaintiff alleges that "[d]uring a meeting with RSNA faculty Linda Stone and Nancy Shedlick, the faculty expressed concerns that Plaintiff was the possible target of harassment at WakeMed." (Compl. ¶ 30.) It is unclear when this meeting took place, the purpose of the meeting, or who was present.

Greensboro School of Nursing ("Defendant Remsburg"), conducted an investigation pursuant to UNCG School of Nursing Policy. (*Id.*)

> On . . . October 20, 2015, [preceptor] Brewer wrote the evaluation for Plaintiff regarding the October 8, 2015 incident for which [Plaintiff] was sent home. . . . On . . . October 29, 2015, [UNCG] completed its investigation of an alleged unsafe practice by Plaintiff at RSNA. At the time, the results of the investigation were not disclosed to Plaintiff. . . . On . . . November 3, 2015, Plaintiff met with RSNA faculty and the Dean of the [UNCG] School of Nursing to discuss the alleged unsafe practice. . . . On . . . November 5, 2015, preceptor Laura Smith submitted a statement to [UNCG] outlining what she perceived as mistreatment of Plaintiff regarding the allegations of an unsafe practice.

(*Id.* ¶¶ 33-36.)

On November 10, 2015, Defendant Remsburg notified Plaintiff that he was dismissed from the program for unsafe practice. (*Id.* ¶ 37.) On November 11, 2015, Plaintiff appealed his dismissal to the UNCG School of Nursing Appeals Committee ("Appeals Committee"). (*Id.* ¶ 38.) Plaintiff informed the school that he had hired pre-litigation counsel, and requested counsel's presence at any hearings. (*Id.* ¶ 39.)

The Appeals Committee conducted a hearing on December 4, 2015. (*Id.* ¶ 42.) Plaintiff was not permitted to have counsel present at the hearing, or to call or question any witnesses. (*Id.*) Plaintiff was not provided a comprehensive list of the evidence against him. (*Id.*) Plaintiff was permitted to give a statement regarding the allegations, but was discouraged from doing so. (*Id.*) On December 10, 2015, Plaintiff was notified that the Appeals Committee had upheld his dismissal. (*Id.* ¶ 43.) Plaintiff submitted a written notice of appeal on December 18, 2015; UNCG Graduate School Dean William Wiener denied Plaintiff's request on January 4, 2016. (*Id.* ¶¶ 44-45.)

On June 12, 2017, Plaintiff filed a complaint in this Court against Defendants UNCG, RSNA, Remsburg and Franklin D. Gilliam Jr. ("Defendant Gilliam"), Chancellor of the University of North Carolina at Greensboro. (*See generally, id.*) Plaintiff alleges that Defendants Remsburg and Gilliam (collectively "Individual Defendants") violated his due process rights by creating and/or overseeing an appeals process that is inadequate under both the North Carolina and United States Constitutions. (*Id.* ¶¶ 49-63.) Under Claim One, Plaintiff brings his due process claim pursuant to 42 U.S.C. § 1983; under Claim Two, he brings his due process claim pursuant to North Carolina Constitution Article I, § 19. (*Id.*) Plaintiff alleges in Claim Three that by denying Plaintiff reasonable clinical accommodations, all Defendants violated the Americans with Disabilities Act ("ADA"). (*Id.* ¶¶ 64-76.) Finally, Plaintiff alleges in Claim Four that UNCG and RSNA violated § 504 of the Rehabilitation Act. (*Id.* ¶¶ 77-87.) Plaintiff seeks declaratory judgment and a temporary and permanent injunction ordering reinstatement in the program. (*Id.* at 17.) The Individual Defendants and UNCG move to dismiss the action pursuant to Federal Rule of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(6), and 12(b)(7). (Defs.' Mot. Dismiss, Docket Entry 13 at 1.)

On March 1, 2018, the Court held a hearing on Defendants' motion to dismiss at which defense counsel was present. (Minute Entry dated 3/1/2018.) The Court had previously scheduled that hearing for February 21, 2018. (Docket Entry 20.) However, Defendants moved to continue that hearing (Docket Entry 21); their motion was granted and the hearing was rescheduled for March 1, 2018 (Text Order dated 1/30/2018). On March 1, 2018, Plaintiff's counsel indicated by telephone on the record that he had not received notice of the hearing and was not in a position to attend at that time. (Hr'g Tr. 9:38:25-9:41:38.) The Court

inquired with the clerk, who determined that Plaintiff's counsel had been given proper notice through the electronic court filing system. The Court denied counsel's request for a continuance, but granted his request for leave to be absent from the hearing and to stand on the pleadings. (*Id.* at 9:41:38-9:42:42.)

## II. ANALYSIS

As an initial matter, there are several claims that may be quickly disposed of by agreement of the parties. First, the Individual Defendants have moved to dismiss Plaintiff's state-constitution-based due-process claims. (Defs.' Mem. Supp. Mot. Dismiss, Docket Entry 14 at 9-10.) Defendants argue that Plaintiff's state-constitution-based claims are barred by the Eleventh Amendment, and that Plaintiff did not lack an adequate state remedy. (*Id.*) The Court need not reach these arguments because in his opposition brief, Plaintiff abandoned these state claims. (Pl.'s Mem. Opp. Mot. Dismiss, Docket Entry 17 at 6.) Plaintiff's state claims should therefore be dismissed.

Second, Defendants argue that Plaintiff is not entitled to punitive damages. (Defs.' Mem. Supp. Mot. Dismiss at 23.) In his complaint, Plaintiff does not expressly seek either compensatory or punitive damages. (Compl. at 17.) In his opposition brief, Plaintiff confirms that he is not seeking punitive damages (or any damages). (Pl.'s Mem. Opp. Mot. Dismiss at 13.) Thus, there appears to be no dispute on this issue. To the extent that the Court might find that Plaintiff's prayer for "further relief as it deems just and proper" (Compl. at 17) includes a claim for punitive damages, any such claim should be dismissed.

## A. Failure to Join a Necessary Party

Defendants next argue that Plaintiff's complaint should be dismissed because he failed to join WakeMed, a necessary party to the action. (Defs.' Mem. Supp. Mot. Dismiss at 22.) On a motion under Rule 12(b)(7), the court initially determines whether the absent party should be joined as a party in accordance with the criteria set forth in Rule 19(a).[3] If the court finds that the party is indeed necessary, the party will be ordered into the action. When the absent party cannot be joined, the court will determine, by analyzing the factors described in Rule 19(b),[4] whether to proceed without the absent party or to dismiss the action. 7 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1609 (1986). In general, federal courts are extremely reluctant to grant motions to dismiss based on nonjoinder, and

---

[3] Rule 19(a) provides, in pertinent part:
> Persons Required to Be Joined if Feasible. (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

[4] Rule 19(b) provides:
> When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include: (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided by: (A) protective provisions in the judgment; (B) shaping the relief; or (C) other measures; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

dismissal will be ordered only when the defect cannot be cured and serious prejudice or inefficiency will result. *See Provident Tradesmens Bank & Tr. Co. v. Patterson,* 390 U.S. 102, 118 (1968).

Here, Defendants argue that joinder is necessary because if Plaintiff's injunction is granted, he will have to complete the remaining clinical courses at WakeMed. (Defs.' Mem. Supp. Mot. Dismiss at 22.) Plaintiff counters that he can complete his clinical coursework at Rex Healthcare or Duke Raleigh Hospital. (Pl.'s Mem. Opp. Mot. Dismiss at 13.) Defendants reply that joinder of one of the above-named institutions is therefore necessary. (Defs.' Reply Pl.'s Mem. Opp. Mot. Dismiss at 12.) At this time, the court is not persuaded that WakeMed is necessary to a just adjudication of the issues before the court. Defendants' motion to dismiss based on Rule 12(b)(7) should therefore be denied.

## B. Subject Matter Jurisdiction and Sovereign Immunity.

Next, the Individual Defendants move to dismiss Plaintiff's § 1983 claim for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) and the Eleventh Amendment. (Defs.' Mem. Supp. Mot. Dismiss at 7-9.) Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. *Mansfield, C. & L.M.R. Co. v. Swan,* 111 U.S. 379, 382 (1884). The defense of sovereign immunity is properly addressed under Rule 12(b)(1). *See Anderson v. United States,* 669 F.3d 161, 164 (4th Cir. 2011), *certified question answered,* 427 Md. 99, 46 A.3d 426 (2012); *cf. Smith v. Wash. Metro. Area Transit Auth.,* 290 F.3d 201, 205 (4th Cir.2002) (citing *Williams v. United States,* 50 F.3d 299, 304 (4th Cir. 1995)).

Pursuant to the Eleventh Amendment, sovereign immunity prohibits actions in federal court by individuals against a state unless the state has consented to suit or unless Congress has lawfully abrogated the states' Eleventh Amendment immunity. *Ballenger v. Owens*, 352 F.3d 842, 844-45 (4th Cir. 2003). "[U]nder the Eleventh Amendment, a State cannot be sued directly in its own name regardless of the relief sought, absent consent or permissible congressional abrogation." *Id.* (internal quotation omitted). The doctrine of sovereign immunity under the Eleventh Amendment applies not only to actions in which the State is a named defendant, but also to actions against its departments, institutions, and agencies. *DeMurry v. N.C. Dep't of Corr.*, 195 N.C. App. 485, 492–93, 673 S.E.2d 374, 380–81 (2009). Additionally, in North Carolina, "[a]ctions against officers of the State in their official capacities are actions against the State for the purposes of applying the doctrine of [sovereign] immunity." *Green v. Kearney*, 203 N.C. App. 260, 268, 690 S.E.2d 755, 762 (2010) (citation omitted); *see also Mullis v. Sechrest*, 347 N.C. 548, 554, 495 S.E.2d 721, 725 (1998) ("[O]fficial-capacity suits are merely another way of pleading an action against the governmental entity.").

Here, UNCG is a constituent institution of the University of North Carolina and, as such, UNCG, like the University of North Carolina, is an agency of the State of North Carolina entitled to Eleventh Amendment immunity. N.C.G.S. § 116-3-4; *Huang v. Bd. Governors Univ. N.C.*, 902 F.2d 1134, 1138-39 (4th Cir. 1990) (holding that N.C.G.S. § 116-3 does not operate as a waiver of the state's immunity under U.S. Const., Amend. XI, and the state has not waived immunity as it applies to the state university system), *reh'g denied*, 1990 U.S. App. LEXIS 13966

(4th Cir. June 12, 1990) (en banc); *Costello v. Univ. of N.C. at Greensboro*, 394 F. Supp. 2d 752, 756 (M.D.N.C. 2005). Thus under the general rule, the Individual Defendants, as university officials, are protected by the Eleventh Amendment.

The general rule notwithstanding, "[t]he doctrine of Ex parte Young provides an exception to Eleventh Amendment immunity where suit is brought against state officials in their official capacities and "(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective." *Al-Deen v. Trustees of Univ. N.C., Wilmington*, 102 F. Supp. 3d 758, 764–65 (E.D.N.C. 2015) (internal citations omitted) (quoting *Ex Parte Young*, 209 U.S. 123, 159–60 (1908); *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998)). "However, "the exception does not permit federal courts to entertain claims seeking retrospective relief, either compensatory or other, for completed, not presently ongoing violations of federally protected rights." *Id.*

To determine whether the *Ex Parte Young* exception applies, the Court "need only conduct a straightforward inquiry into whether the complaint [(1)] alleges an ongoing violation of federal law and [(2)] seeks relief properly characterized as prospective." *Constantine v. Rectors & Visitors George Mason Univ.*, 411 F.3d 474, 496 (4th Cir. 2005) (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n Md.*, 535 U.S. 635, 645 (2002)). "Because reinstatement is a form of prospective relief, the refusal to provide that relief when it is requested can constitute an ongoing violation of federal law such that the *Ex parte Young* exception applies." *Bland v. Roberts*, 730 F.3d 368, 390 (4th Cir. 2013), *as amended* (Sept. 23, 2013) (citing *Coakley v. Welch*, 877 F.2d 304, 307 (4th Cir. 1989); *State Emps. Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 96 (2d Cir. 2007). Thus, "[c]ourt orders directing a state official to reinstate a plaintiff are

considered prospective relief and such claims are not barred by the Eleventh Amendment." *Middlebrooks v. Univ. Md. Coll. Park*, 980 F. Supp. 824, 828 (D. Md. 1997), (citing *Treleven v. Univ. Minn.*, 73 F.3d 816, 819 (8th Cir.1996); *Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir.), *cert denied*, 484 U.S. 846 (1987); *Chinn v. City Univ. N.Y. Sch. Law Queens Coll.*, 963 F. Supp. 218, 224-25 (E.D.N.Y. 1997)), *aff'd sub nom. Middlebrooks v. Univ. Md.*, 166 F.3d 1209 (4th Cir. 1999). Declaratory relief may also "be properly characterized as prospective relief, but not where . . . the plaintiff seeks declarations related to only past conduct." *Al-Deen*, 102 F. Supp. 3d at 765 (citing *Green v. Mansour*, 474 U.S. 64, 67–68, 71, (1985)).

Here, it is clear that Plaintiff's complaint alleges an ongoing violation of federal law. Specifically, Plaintiff alleges that the Individual Defendants "are overseeing a process that denies students the opportunity to be heard, cross-examine witnesses, present their own witnesses, or have access to an attorney." (Pl.'s Mem. Opp. Mot. Dismiss at 6.) Plaintiff also argues that he "still has no adequate access to a due process hearing and no method of appeal." (Compl. at 17.) Thus, the first prong of the inquiry is satisfied. However, not all of the relief Plaintiff seeks can be properly characterized as prospective. Plaintiff first seeks an injunction ordering his reinstatement in the program. (*Id.*) This is a form of prospective relief, and is therefore permitted by the *Ex Parte Young* exception. *See Middlebrooks*, 980 F. Supp. at 828. However, Plaintiff also "respectfully prays that: . . . [t]he court enter judgment in favor of Plaintiff and against Defendant declaring Defendant *violated Plaintiff's* Constitutional rights to Due Process under the . . . U.S. Constitution . . . ." (*Id.* (emphasis added).) On its face, Plaintiff's prayer is for a declaratory judgment relating only to a past infringement on Plaintiff's rights (as opposed to judgment as to whether the appeals policy continues to infringe on the

rights of nursing students generally, for example). Plaintiff's request for declaratory judgment thus constitutes retrospective relief to which *Ex Parte Young* is not applicable. *Al-Deen*, 102 F. Supp. 3d at 765. The Eleventh Amendment therefore bars Plaintiff's prayer for declaratory judgment as against the Individual Defendants, but not his prayer for reinstatement.

### C. Failure to State a Claim

Defendants next argue that Plaintiff's § 1983, ADA, and Rehabilitation Act claims should be dismissed pursuant to Federal Rule of Procedure 12(b)(6). A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (1999). A complaint that does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'" must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. (citing Twombly*, 550 U.S. at 556*); see also Simmons v. United Mortg. & Loan Invest.*, 634 F.3d 754, 768 (4th Cir. 2011) ("On a Rule 12(b)(6) motion, a complaint must be dismissed if it does not allege enough facts to state a claim to relief that is *plausible* on its face." (emphasis in original) (internal citation and quotation marks omitted)). The "court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint[,]" but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words,

the standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate the plaintiff has stated a claim that makes it plausible he is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557).

### 1. Due Process

The Individual Defendants argue that Plaintiff cannot bring a § 1983 claim against them in their official capacities because Plaintiff has not shown that the Individual Defendants acted personally in the deprivation of his rights. (Defs.' Mem. Supp. Mot. Compel at 10-11.) Defendants' argument misses the mark.

Defendants are correct that in order to prevail in a personal capacity suit, a plaintiff must show that the defendant acted personally in the deprivation. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (citing *Monroe v. Pape*, 365 U.S. 167 (1961)) ("On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right."). "Official-capacity suits, in contrast, 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Id.* at 165–66 (citing *Monell v. N.Y. City Dept. of Soc. Servs.*, 436 U.S. 658, 690, n. 55 (1978)). "In an official-capacity suit under § 1983, a plaintiff must establish that the government entity was the 'moving force' behind the deprivation, in that the 'policy or custom' of the entity or official, 'played a part in the violation of federal law.'" *Foster v. Md. State Police*, No. CIV. A. RDB-08-2505, 2010 WL 311326, at *4 (D. Md. Jan. 20, 2010) (quoting *Graham*, 473 U.S. at 166). "Courts have found that such a policy or custom may be found in 'formal or informal ad hoc "policy" choices or decisions' made by officials who are authorized to conceive of such policies." (*Id.* (citing *Spell v. McDaniel*, 824 F.2d 1380, 1385 (4th Cir. 1987)).

Thus, courts have found that a plaintiff properly stated a claim for relief where he alleged that a defendant created, oversaw, or enforced a policy that violated federal law. *See, e.g., id.; Swagler v. Harford Cty.*, No. CV RDB 08-2289, 2009 WL 10682452, at *9 (D. Md. June 29, 2009).

Here, Plaintiff alleges that "[a]s Chancellor of the university, Defendant Gilliam oversees all policies and procedures . . . . [including] a set of policies that deny due process to nursing students . . . who are dismissed on allegations of unsafe practices. . . . As Dean of the [UNCG] School of Nursing, Defendant Robin Remsburg oversaw the investigation process into the alleged unsafe practice and oversaw much of the appeals process." (Compl. ¶¶ 46-47.) Taken as true, Plaintiff plead facts that show that Defendant Gilliam was authorized to—and did—formally or informally, create and oversee an appeals process. Similarly, Defendant Remsburg oversaw that appeals process. (*Id.*) Plaintiff therefore plead facts from which the Court can reasonably infer that the entities' policies and customs were created and/or enforced by the Individual Defendants in their official capacities. Thus, so long as Plaintiff also plead facts sufficient to make out a cognizable claim that the appeals policy itself violated federal law, there is no reason he cannot bring such claims against the Individual Defendants in their official capacities. For the reasons set forth below, the Court finds that Plaintiff has sufficiently stated a claim.

To survive a defendants' motion to dismiss on a § 1983 claim based on procedural due process, Plaintiff must present sufficient factual allegations to state "(1) a cognizable 'liberty' or 'property' interest; (2) the deprivation of that interest by 'some form of state action'; and (3) that the procedures employed were constitutionally inadequate." *Iota Xi Chapter Sigma Chi*

*Fraternity v. Patterson*, 566 F.3d 138, 146 (4th Cir. 2009) (quoting *Stone v. Univ. Md. Med. Syst. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988)).

Defendants make no argument that Plaintiff did not adequately plead facts to support the first two elements. The Court thus assumes, without deciding, that the Individual Defendants were state actors and that Plaintiff had a cognizable "liberty and property interest in completing the degree he sought to obtain from [UNCG]," (Compl. at ¶ 50; *see Tigrett v. Rector & Visitors Univ. Va.*, 137 F. Supp. 2d 670, 675 (W.D.Va.2001) (assuming without deciding that student has property interest in continued enrollment), *aff'd*, 290 F.3d 620 (4th Cir. 2002)). The crux of the matter, then, is whether the procedures employed in Plaintiff's appeal were constitutionally adequate.

Procedural due process requires, at a minimum, notice and some opportunity to be heard. *Joint Anti–Fascist Refugee Comm. v. McGrath*, 341 U.S. 123, 178 (1951). After meeting that threshold, the requirements of procedural due process are "flexible and call[ ] for such procedural protections as the particular situation demands." *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972). "The nature of the notice and the quality of the hearing are determined by the competing interests involved." *Richardson v. Town of Eastover*, 922 F.2d 1152, 1159 (4th Cir. 1991) (citing *Goss*, 419 U.S. at 579). The competing interests that a courts must balance to determine the process necessary are

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mallette v. Arlington Cty. Emps.' Supplemental Ret. Sys. II*, 91 F.3d 630, 640 (4th Cir. 1996) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). Accepting all well-plead facts as true, and construing the facts in the light most favorable to the Plaintiff, the Court will review each factor and then balance these competing interests. *Id.*; *see Iqbal*, 556 U.S. at 678 (2009); *Twombly*, 550 U.S. at 570.

*Mathews* first requires the Court to consider the Plaintiff's private interest. 424 U.S. at 335. Assuming Plaintiff had an interest in completing his degree, that interest was high. First, Plaintiff faced expulsion. *See Tanyi v. Appalachian State Univ.*, No. 5:14-CV-170RLV, 2015 WL 4478853, at *4 (W.D.N.C. July 22, 2015). Second, expulsion carried significant short and long-term consequences. *See Gulyas v. Appalachian State Univ.*, No. 516CV00225RLVDCK, 2017 WL 3710083, at *6 (W.D.N.C. Aug. 28, 2017), *reconsideration denied*, 2017 WL 4294109 (W.D.N.C. Sept. 27, 2017). For example, Plaintiff would lose significant time, effort, and money invested in his degree having completed the academic coursework and all but eight weeks of the clinical coursework. (Compl. ¶ 28, 56, 62-63.) Plaintiff also alleges expulsion would "likely preclude[ ] his re-admittance to the program and prevent[ ] him from entering a comparable program at another institution to seek the same degree." (Compl. ¶¶ 62-63.) Therefore, the Court can properly infer that Plaintiff's interest was high.

The Court must next consider the risk of an erroneous deprivation of that private interest through the procedures used, and the probable value of additional or substitute procedural safeguards. *Mathews*, 424 U.S. at 335. [5] Plaintiff's complaint alleges he was denied

___

[5] The procedure due a student depends in large part on whether the student's dismissal is disciplinary or academic in nature. *Henson v. Honor Comm. Univ. Va.*, 719 F.2d 69, 74 (4th Cir. 1983). Disciplinary proceedings require more stringent procedures because unlike academic proceedings that

three procedures that courts have found both create a risk of erroneous deprivation of a student's interest and have significant value in safeguarding a student's interest at a disciplinary hearing. [6]

**First**, Plaintiff's attorney was excluded from the hearing and Plaintiff was not provided substitute counsel. *See* N.C.G.S. § 116-40.11 (2013) (allowing students accused of violating "disciplinary or conduct rules" to be represented by a licensed attorney at a disciplinary hearing at their own expense)[7]; *Henson* 719 F.2d at 74 (noting a student's right to an attorney historically

---

involve qualitative evaluations, disciplinary proceedings "bear a resemblance to traditional judicial and administrative factfinding." *Allahverdi v. Regents Univ. N.M.*, No. 05-277 JB/DJS, 2006 WL 1313807, at *14 (D.N.M. Apr. 25, 2006) (citation omitted). Here, both parties refer to Plaintiff's hearing as "disciplinary" in their supporting memoranda. (Defs.' Mem. Supp. Mot. Dismiss at 15; Pl.'s Mem. Opp. Mot. Dismiss at 11.) Although Defendants argued at the March 1, 2018 hearing that Plaintiff's dismissal was academic in nature, they made no similar argument in their Motion to Dismiss or supporting Memorandum. (MTD Hr'g Tr. 9:46:18-48:9.) For the purposes of the present motion to dismiss, without the benefit of information that might be available on summary judgment such as investigation notes, a hearing transcript, or documents outlining either the university's rules of conduct or its appeals procedure, the Court will assume, without deciding, that Plaintiff's dismissal was disciplinary in nature.

[6] It is well settled that a student is not entitled to any of the three safeguards contemplated here when facing only a short suspension. *Goss,* 419 U.S. at 583 ("We stop short of construing the Due Process Clause to require, countrywide, that hearings in connection with short suspensions must afford the student the opportunity to secure counsel, to confront and cross-examine witnesses supporting the charge, or to call his own witnesses to verify his version of the incident.") Where long-term suspension or expulsion is at issue, although the Fourth Circuit's decision in *Henson*, 719 F.2d at 74, provides some guidance, no higher court has created a concrete "model for assuring constitutional due process in all administrative settings." In *Henson*, the Fourth Circuit found the procedures employed were constitutionally sufficient to protect the student from "an erroneous or arbitrary decision" in a disciplinary dismissal hearing. *Id.* Those procedures included "adequate notice of the charges . . . and the opportunity to be heard by disinterested parties. [The student] was confronted by his accusers and given the right to have a record of the hearing reviewed by a student appellate body." *Id. at* 74.

[7] North Carolina General Statute § 116-40.11 provides, in pertinent part,

> Any student enrolled at a constituent institution who is accused of a violation of the disciplinary or conduct rules of the constituent institution shall have the right to be represented, at the student's

was "not a right generally available to students facing disciplinary charges" but finding procedures adequate where the student was provided with two student-lawyers who consulted extensively with his personally retained attorney at all critical stages of the proceedings).

**Second**, Plaintiff was not provided a comprehensive list of the evidence to be used against him in advance of the hearing. *See Flaim v. Med. Coll. Ohio,* 418 F.3d 629, 638 (6th Cir. 2005) (stating that constitutionally adequate notice must afford "a meaningful opportunity to prepare for the hearing"); *see also Doe v. Rector & Visitors George Mason Univ.*, 149 F. Supp. 3d 602, 615 (E.D. Va. 2016) (citing *Henson*, 719 F.2d at 74 ("embracing" *Dixon v. Ala. State Bd. Ed.*, 294 F.2d 150, 159 (5th Cir. 1961) ("[T]he student should be given the names of the witnesses against him and an oral or written report on the facts to which each witness

---

expense, by a licensed attorney or nonattorney advocate who may fully participate during any disciplinary procedure or other procedure adopted and used by the constituent institution regarding the alleged violation. However, a student shall not have the right to be represented by a licensed attorney or nonattorney advocate in either of the following circumstances: (1) If the constituent institution has implemented a "Student Honor Court" which is fully staffed by students to address such violations. (2) For any allegation of "academic dishonesty" as defined by the constituent institution.

Defendants argued at the hearing that that this statute does not apply because Plaintiff's dismissal was academic in nature. (MTD Hr'g Tr. 9:46:18-48:9.) However, they provide no authority for this proposition, and the Court can find none. The statute's reach is not obvious from the text, and no state or federal court has contemplated the applicability of this rule to a student of a constituent institution. *See Chandler v. Forsyth Tech. Cmty. Coll.*, No. 1:15CV337, 2016 WL 4435227, at *14 (M.D.N.C. Aug. 19, 2016) (finding the statute inapplicable because the institution was not a "constituent institution" by statute.); *Murray v. Univ. of N. Carolina at Chapel Hill*, 782 S.E.2d 531, 537 (N.C. Ct. App.), *review on additional issues allowed*, 787 S.E.2d 22 (N.C. 2016), *and aff'd*, 369 N.C. 585, 799 S.E.2d 612 (2017) (applicability and effect of the statute not reached on the merits).

testifies."))); *Herman*, 341 F. Supp. at 230–31 (the four safeguards necessary to protect a students' rights include the right "to the names and a summary of the testimony of witnesses to be used against him . . . .")

**Third**, Plaintiff was prevented from questioning or calling witnesses. *See Henson*, 719 F.2d at 74 (finding procedures adequate where the student was confronted by his accusers); *Dixon*, 294 F.2d at 159 ("[a student] should also be given the opportunity to present to the Board, or at least to an administrative official of the college, his own defense against the charges and to produce either oral testimony or written affidavits of witnesses in his behalf."). *See also, e.g., Painter v. Adams*, No. 315CV00369, 2017 WL 4678231, at *6 (W.D.N.C. Oct. 17, 2017) (student permitted to question his accusers); R.M.B. v. *Bedford Cty. (Va.) Sch. Bd.*, 169 F. Supp. 3d 647, 656–57 (W.D. Va. 2016) (same); *Cobb v. Rector & Visitors Univ. Va.*, 69 F. Supp. 2d 815, 829 (W.D. Va. 1999) (student permitted to call witnesses).

Finally, *Mathews* requires the Court to consider the government's interest, including the administrative and financial burden of additional safeguards. 424 U.S. at 335. Here, the administrative and financial burden of providing the safeguards discussed above appears to be slight. The university already conducted an investigation and provided a hearing in response to Plaintiff's request for appeal. Thus, allowing Plaintiff to bring his attorney—retained at his own expense—to the hearing would have created little or no additional burden. While allowing Plaintiff to present and cross-examine witnesses would undoubtedly have lengthened the hearing, it would not appear—and Defendants do not suggest—that doing so would have created an unreasonable burden. The most significant burden thus would have stemmed from having to provide Plaintiff with advance notice of all the evidence against him. This too,

would appear to constitute only a minor burden, especially where, as here, an investigation had already taken place which presumably required some authority to gather and review all the evidence. Providing Plaintiff advance notice of all the investigation findings and other previously-reviewed evidence would thus have been relatively straightforward and simple. Again, Defendants make no argument to the contrary. The Court can therefore infer that the burden, and consequently the Individual Defendants' interest, was low.

On balance, at this early stage, the *Mathews* factors weigh in favor of Plaintiff. Taken as true, and drawing all reasonable inferences in the light most favorable to Plaintiff, *Iqbal*, 556 U.S. at 678 (2009); *Twombly*, 550 U.S. at 570, the Court can reasonably infer that Plaintiff's interest was high. In addition, the procedures employed posed a risk of erroneous deprivation of Plaintiff's interest. At least three additional safeguards—that is, the presence of an attorney, the opportunity to call and question witnesses, and advance warning of all the evidence— would have value in safeguarding that interest. Importantly, the burden on Defendants to allow the above-mentioned safeguards would be quite low. Thus, despite Defendants' arguments to the contrary, Plaintiff has made out a cognizable due process claim.

## 2. ADA and Rehabilitation Act

The Individual Defendants next argue that Plaintiff's ADA claims cannot proceed against them "because [this] federal statute does not impose individual liability." (Defs.' Mem. Supp. Mot. Dismiss at 16.)[8] Indeed, the ADA does not permit suit against an individual

---

[8] The Individual Defendants argue that because the statue does not impose individual liability, Plaintiff's ADA claim against the Individual Defendants should be dismissed pursuant to Rule 12(b)(1), (2) and (6). Defendants have presented no argument in support of their contention that either 12(b)(1) or 12(b)(2) applies. Defendants' 12(b)(2) defense is deemed waived. *See* Local Rule 7.2(a)(4) (requiring litigants to support their motions with arguments); Local Rule 7.3(k) (providing

defendant in his or her individual capacity. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). Here, however, Plaintiff has not alleged that the Individual Defendants are liable in their individual or "personal" capacities; rather, Plaintiff's claims are against the Individual Defendants in their official capacities only. (Compl. at 1.)

As noted elsewhere in this opinion, a claim against a "state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Mich. Dep't State Police*, 491 U.S. 58, 71 (1989) (citation omitted). A plaintiff therefore may properly bring an ADA claim against an individual in his or her official capacity. *See, e.g., Baird*, 192 F.3d at 473; *Dickinson v. Univ. N.C.*, 91 F. Supp. 3d 755, 767 (M.D.N.C. 2015). Nevertheless, where a plaintiff's claims for relief under the ADA against an individual in his official capacity are identical to those against the state, and the claims against the state remain viable, claims against the individual defendant may be dismissed as duplicative. *Doe v. Bd. Educ. Washington Cty.*, No. CIV. JFM-15-00074, 2015 WL 4716065, at *3 (D. Md. Aug. 6, 2015) (citing *Adams v. Montgomery Coll. (Rockville)*, 834 F. Supp. 2d 386, 396 (D. Md. 2011) ("But as established above, Plaintiff states a valid cause of action under the ADA against the College. There is thus no need to pursue a claim against Defendants . . . in their official capacities."); *Munoz v. Baltimore Cty., Md.*, No. CIV.A. RDB-11-02693, 2012 WL 3038602, at *5 (D. Md. July 25, 2012) (dismissing as "redundant" plaintiff's claims against individual supervisors in their official capacities)).

---

that a "motion unaccompanied by a required brief may, in the discretion of the Court, be summarily denied"). On its own motion, the Court finds that it does have subject matter jurisdiction as to these claims. However, as will be discussed in greater detail below, Plaintiff's ADA claim against the Individual Defendants should be dismissed as duplicative and redundant.

Here, as noted, Plaintiff brings his ADA claims against the Individual Defendants in their official capacities only. (Compl. at 1.) For the reasons that follow, the Court finds that Plaintiff has made out a cognizable ADA claim against the Individual Defendants and UNCG. Because Plaintiff's ADA claim against UNCG is viable, his ADA claim against the Individual Defendants is duplicative and redundant. *See Bd. Educ. Washington Cty.,* 2015 WL 4716065, at *3.[9] Plaintiff's ADA claims against the Individual Defendants should therefore be dismissed.

The Individual Defendants are joined by UNCG in next arguing that Plaintiff failed to state a cognizable claim under the ADA. (Defs.' Mem. Supp. Mot. Dismiss at 17-21.) UNCG also argues that Plaintiff failed to state a cognizable claim under the Rehabilitation Act. (*Id.*) The ADA[10] and § 504 of the Rehabilitation Act[11] are "generally construed to impose the same requirements" and therefore may be analyzed together. *Betts v. Rector & Visitors of Univ. Va.,*

---

[9] Plaintiff acknowledged as much. In his response brief, Plaintiff states "[s]o long as [UNCG] remains a defendant in the ADA and Rehabilitation Act claims brought by Plaintiff, Plaintiff has no objection to dismissing what are effectively duplicative claims against the university, as the individual defendants are sued only in their official capacity." (Pl.'s Mem. Opp. Mot. Dismiss at 10.)

[10] Title II of the ADA provides, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity." 42 U.S.C.A. § 12132.

[11] § 504 provides, "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service." 29 U.S.C.A. § 794.

145 F. App'x 7, 10 (4th Cir. 2005). Under both Acts, a plaintiff "must show that (1) he has a disability as defined by the statute; (2) he is otherwise qualified for the benefit in question; and (3) he was excluded from the benefit on the basis of his disability." *Id.*[12]

Here, Plaintiff has plead facts, taken as true, that sufficiently support his allegations of discrimination under both the ADA and the Rehabilitation Act. Plaintiff stated that on June 11, 2014, his physician wrote a letter to UNCG indicating Plaintiff suffered from generalized anxiety disorder and obsessive compulsive disorder; that an alleged incident of harassment by a clinical preceptor had been "traumatic"; and that such incidents could "exacerbate anxiety and affect attention and focus consequently." (Compl. ¶¶ 12, 17.) When Plaintiff subsequently registered for and was granted academic accommodations, he objected to the denial of clinical accommodations. (*Id.* ¶ 19.) Thereafter, Plaintiff filed a complaint with the graduate school Deans alleging that RSNA Program Director Nancy Maree addressed Plaintiff's ADA testing accommodations in front of other students after he complained of difficulties with preceptors and RSNA staff and faculty. (*Id.* ¶ 26.) Faculty members expressed concerns that Plaintiff was the target of harassment at WakeMed. (*Id.* ¶ 30.) Plaintiff and Defendant entered into a learning contract that provided for reassignment to another preceptor in the event of "[a]ny concerns of mistreatment or abuse" by a preceptor. (*Id.* ¶ 20-21.) Later, Plaintiff learned, and reported per the learning contract, that preceptor Brewer had made disparaging comments about Plaintiff. (*Id.* ¶ 27.) Plaintiff's request for reassignment to

---

[12] The causation standard differs between the Acts. *Id.* "[Rehabilitation Act] plaintiffs must demonstrate that the discrimination occurred 'solely by reason of' their disability. ADA plaintiffs, on the other hand, need only demonstrate that their disability played a motivating role in the discriminatory action." *Id.* at 10 n.2 (quoting 29 U.S.C. § 794(a) and citing *Baird*, 192 F.3d at 468–70).

another preceptor was denied. (*Id.*) Plaintiff thereafter felt an "ever-increasing amount of anxiety from being forced to work with [preceptor] Brewer, . . . consistent with his doctors' assessments of his disabilities." (*Id.* ¶ 31.) On October 8, 2015, preceptor Brewer sent Plaintiff home from WakeMed for "poor performance," and on October 11, 2015, Plaintiff was accused of falsifying a medical record while at WakeMed. (*Id.* ¶¶ 30, 32.) Another preceptor then "submitted a statement to [UNCG] outlining what she perceived as mistreatment of Plaintiff regarding the allegations of an unsafe practice." (*Id.* ¶ 36.)

In the light most favorable to Plaintiff, these facts support the following allegations: (1) Defendants denied Plaintiff clinical accommodations, which exacerbated Plaintiff's symptoms and was in itself discriminatory; (2) as a result of his disability and his request for accommodations, Plaintiff became the target of harassment, which culminated in an accusation of unsafe practice; (3) Defendants refused to help Plaintiff resolve the harassment and discrimination; (4) consequently, UNCG's discriminatory acts and omissions ultimately led to Plaintiff's dismissal. Taken as true, these allegations are sufficient to state a claim for relief under the ADA and Rehabilitation Acts.

Defendants' arguments to the contrary are not persuasive. There is no dispute here that Plaintiff sufficiently alleged that he suffers from a disability, that is, depression, general anxiety disorder, and/or obsessive compulsive disorder. (Compl. ¶¶ 13, 17, 24, 67, 79; Defs.' Mem. Supp. Mot. Dismiss at 20.) Similarly, Defendants do not expressly argue that Plaintiff was not otherwise qualified to be a candidate in the nursing program.[13] Rather, Defendants

---

[13] Plaintiffs cite *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 465 (4th Cir. 2012) for the proposition that that Plaintiff's claim fails because "he admitted that UNCG dismissed him because of his unsafe practice." (Defs.' Mem. Supp. Mot. Dismiss at 21; citing *Halpern,* 669 F.3d at

argue that Plaintiff's allegations are broad, conclusory, and without factual support. (Defs.' Mem. Supp. Mot. Dismiss at 20.) Defendants also argue that Plaintiff failed to allege "that he was dismissed from the program because of, by reason of, or solely by reason of, his disability." (*Id.* at 20-21.)

The Court disagrees. First, Plaintiff's complaint does not lack factual support. Defendants argue, for example, that Plaintiff failed to allege precisely how he was treated differently. (*Id.* at 20.) But the factual support is there: Plaintiff alleges that faculty members expressed concerns that Plaintiff was the target of harassment at WakeMed and about "mistreatment regarding the allegations of unsafe practice." (Compl. ¶¶ 30, 36.) The program director also discussed Plaintiff's ADA accommodations in front of other students. (*Id.* ¶ 26.)

Second, Plaintiff need not have specifically alleged that he was dismissed "by reason of, or solely by reason of, his disability." (Defs.' Mem. Supp. Mot. Dismiss at 20.) On the contrary, "[e]ven if [ ]he had had made such an allegation, it would not have been accepted as true for purposes of Rule 12(b)(6) because a plaintiff's grounds for relief 'requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Dickinson*, 91 F. Supp. 3d at 769 (quoting *Twombly*, 550 U.S. at 555 (citations omitted)). As noted, the facts alleged in the complaint make plausible Plaintiff's ultimate claim that he was dismissed from the program because of disability discrimination. *Id.; see also Shepard v. Irving*, 77 F. App'x 615, 622–23 (4th Cir. 2003) ("The district court wrongly concluded that the

---

465 ("We have previously observed that 'misconduct—even misconduct related to a disability—is not itself a disability' and may be a basis for dismissal." (citations omitted)). Defendants make no further argument that Plaintiff was not otherwise qualified. *See* Local Rule 7.2(a)(4) (requiring litigants to support their motions with arguments).

plaintiff failed to allege that she was denied proper representation at the Honor Committee hearing because of her disability."). Thus, despite Defendants' arguments to the contrary, Plaintiff stated a plausible claim under the ADA and the Rehabilitation Acts.

## IV. CONCLUSION

For the reasons stated herein, **IT IS THEREFORE RECOMMENDED** that Defendants' motion to dismiss (Docket Entry 13) be **GRANTED IN PART** and **DENIED IN PART.**

- As to Claim One for §1983 Due Process violations against the Individual Defendants, Defendants' motion should be **GRANTED** to the extent Plaintiff seeks declaratory relief and **DENIED** in other aspects;

- As to Claim Two for Due Process violations under the North Carolina Constitution against the Individual Defendants, Defendants' motion should be **GRANTED**;

- As to Claim Three for ADA violations, Defendants' motion should be **GRANTED** as to the Individual Defendants, and **DENIED** as to Defendant UNCG;

- As to Claim Four for Rehabilitation Act violations against Defendant UNCG, Defendants' motion should be **DENIED.**

Joe L. Webster
United States Magistrate Judge

April 12, 2018
Durham, North Carolina